# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JASON KEITH-DAVID MANNERS,

Defendant-Appellant.

UNPUBLISHED
September 20, 2018

No.  337319
Wayne Circuit Court
LC No.  16-007440-01-FC

Before:  O'CONNELL, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant, Jason Manners, appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct, MCL 750.520b (force or coercion and personal injury, or commission of another felony), unlawful imprisonment, MCL 750.349b, assault with intent to do great bodily harm, MCL 750.84, and domestic violence, MCL 750.81(2).  Manners was sentenced as a fourth habitual offender, MCL 769.12, to 30 to 50 years' imprisonment for each first-degree criminal sexual conduct conviction, 20 to 30 years' imprisonment each for his unlawful imprisonment and assault with intent to do great bodily harm convictions, and 93 days in jail (with credit for time served) for his domestic violence conviction.  This case arises from defendant's sexual assault of his former girlfriend and his commission of related crimes. Manners represented himself for most of his trial, and he continues to represent himself on appeal.  Manners raises several procedural claims on appeal.  We reject each challenge, and we affirm.

## I.  RIGHT OF SELF-REPRESENTATION

Manners first argues that his constitutional right of self-representation was violated when the trial court refused to allow Manners to present evidence of his prior convictions and to read from or discuss MRE 401 during closing argument.  Manners has waived review of this issue, and his argument is devoid of merit.  We review constitutional questions de novo, and we review "a trial court's decision on a defendant's request to represent himself for an abuse of discretion." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

"Both federal and state law . . . guarantee a defendant the right of self-representation, although this right is subject to the trial court's discretion."  *Id.* at 268 (quotation marks and citation omitted).  "While a defendant's right to self-representation encompasses certain specific core rights, including the right to be heard, to control the organization and content of his own

-1-

defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at times, the right to self-representation is not unfettered." *People v Arthur*, 495 Mich 861, 862; 836 NW2d 694 (2013). In this case, Manners was afforded his right of self-representation. Throughout the trial, Manners cross-examined the prosecution's witnesses, made objections, argued his positions, decided to call himself as a witness with questions he prepared in writing to be asked by his standby counsel, James Schlaff, and presented his own closing argument. Although Schlaff was available to advise and assist Manners at trial, Manners controlled the organization and content of his own defense.

Manners nonetheless contends that he was denied his right of self-representation because the trial court refused to permit him to present evidence of his prior convictions to show that he had not committed any sexual assaults or related crimes and refused to permit him to discuss or read from MRE 401 during his closing argument. The trial court's rulings on these matters did not implicate or affect defendant's right of self-representation. Rather, the trial court made an evidentiary determination regarding the admissibility of defendant's prior convictions and did not allow Manners to read from a rule of evidence during closing argument. The fact that the trial court made such rulings contrary to defendant's position does not mean that Manners was denied the right to represent himself.

Defendant's argument is more properly addressed as a claim that he was denied his constitutional right to present a defense. Although Manners does not directly frame the argument in this manner, he does refer to his right to due process. The constitutional right to present a defense is premised in part on the constitutional right to due process. *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). A defendant has a right to present evidence in his own defense, but this right is not unlimited. *Id*. For example, a defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citations omitted). A rule of evidence does not infringe on a defendant's constitutional right to present a defense unless the rule is arbitrary or disproportionate to its purpose. *King*, 297 Mich App at 474.

Defendant's right to present a defense was not violated by the trial court's refusal to permit Manners to introduce evidence of his prior convictions, which were for firearm possession offenses. During the discussion of this issue outside the presence of the jury, the trial court stated that Schlaff could question Manners about whether he had ever been arrested or convicted of the types of crimes involved in this case but that Manners could not discuss his prior convictions. Schlaff responded that he was willing to ask Manners if he had ever been convicted of criminal sexual conduct, unlawful imprisonment, and assault with intent to do great bodily harm. Manners agreed to that plan. Despite this agreement, Manners failed to testify that he had never been convicted of criminal sexual conduct, unlawful imprisonment, and assault with intent to do great bodily harm. Manners wrote out the questions that Schlaff asked Manners on direct examination, and Manners orally told Schlaff off the record what questions to ask Manners on redirect examination.[1] Moreover, even though Manners failed to testify regarding

---

[1] Manners apparently wrote the direct examination questions before he agreed to have Schlaff ask him about prior convictions, but Manners could have written additional questions for Schlaff

-2-

the matter, Manners asserted during his closing argument that he had never been convicted of criminal sexual conduct.

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). Waiver extinguishes any error and precludes appellate review. *Carter*, 462 Mich at 215. In this case, Manners approved of the trial court's proposal that he could inform the jury that he had no prior convictions for the offenses charged by so testifying. Therefore, Manners waived any challenge to the trial court's decision and extinguished any error related to this matter.

Even if this issue were not waived, defendant's argument lacks merit. "[T]he right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). The admission and use of evidence of prior convictions and character evidence are governed by the rules of evidence. See MRE 609 (barring the use of most crimes for impeachment of a witness); MRE 404 (addressing the admissibility of character evidence). The trial court reasonably sought to find a way to avoid the potential for prejudice that may have arisen from introducing evidence about defendant's prior convictions while still allowing Manners to testify in front of the jury that he had no prior convictions for the offenses that were the basis for this trial. Although Manners failed to avail himself of the opportunity to testify about his lack of prior convictions for the types of offenses at issue in this case, he addressed the matter during his closing argument. Overall, defendant's right to present a defense was not violated.

In connection with this purported error, Manners contends that he was prejudiced because the jury asked if the reference to a parole hearing in one of defendant's letters to the complainant related to this case. Manners suggests that the jury may have wondered about his past criminal history. Manners had the opportunity to testify about his lack of prior convictions for the offenses for which he was on trial in this case, but he failed to do so. In addition, the trial court provided a proper limiting instruction to the jury regarding the reference to a parole hearing contained in one of defendant's letters to the complainant. A jury is presumed to follow the trial court's instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, the jury's question did not reflect unfair prejudice.

Manners also asserts in a single sentence that the trial court's refusal to admit evidence of his prior convictions violated what Manners refers to as his First Amendment rights to "Freedom of Choice" and "Freedom of Speech." Manners did not cite case law to support this assertion or to explain how the trial court's ruling implicated his First Amendment rights. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). By insufficiently briefing this argument, Manners has abandoned it. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006). Therefore, we do not address it.

---

to ask, could have asked for more time to write additional questions, or could have orally told Schlaff what additional questions to ask.

Next, Manners was not denied his right to present a defense when he was precluded from discussing or reading from MRE 401 in closing argument. The trial court offered to excuse the jury so that Manners could argue to the trial court why he should be allowed to discuss or read from MRE 401 in closing argument. Manners responded that he would carry on, he withdrew his request, and he added that he could make his closing argument without using MRE 401. Therefore, Manners abandoned his request to discuss or read from MRE 401. Defendant's waiver extinguished any error, precluding appellate review.

Even if this aspect of the issue were not waived, defendant's argument lacks merit. A defendant must comply with procedural and evidentiary rules. *King*, 297 Mich App at 474. It is the trial court's duty to instruct the jury about the applicable law. *People v Ullah*, 216 Mich App 669, 677; 550 NW2d 568 (1996). Counsel may refer to the pertinent legal standards when arguing a theory of the case, but counsel may not read the law to the jury. *People v June*, 34 Mich App 313, 316; 191 NW2d 52 (1971). Manners was not barred from arguing his theory of the case or what evidence was relevant. He was barred from reading MRE 401 to the jury, as he apparently tried to do during closing argument. Requiring Manners to comply with an established rule of procedure did not violate his right to present a defense.

## II. TIME LIMIT ON CLOSING ARGUMENT

Manners argues that his constitutional right to present a defense was violated because the trial court imposed a 20-minute time limit for closing argument. We disagree. This Court reviews de novo whether a defendant was denied the constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). That right is not unlimited; it is still subject to procedural rules. *Solloway*, 316 Mich App at 198. A trial court may impose a time limit on closing argument, and it must "give the parties adequate time for argument, having due regard for the complexity of the action . . . ." MCR 2.507(F).

This Court has previously upheld a trial court's imposition of time limits on the closing arguments of counsel. For example, this Court approved of a two-hour time limit on defense counsel's closing argument in a lengthy trial on charges that included two counts of first-degree murder. *People v Sowders*, 164 Mich App 36, 40, 48-49; 417 NW2d 78 (1987). Similarly, this Court declined to order a new trial when the trial court limited closing argument to one-and-a-half hours in an "extremely complicated" conspiracy to commit first-degree murder case in which "voluminous evidence" was produced at trial. *People v Hence*, 110 Mich App 154, 158-159, 172; 312 NW2d 191 (1981).

In the present case, before closing arguments began, the trial court instructed the parties that they would be limited to 20 minutes each for closing argument. Despite this time limit, the trial court gave Manners additional time when he reached the end of his allotted closing argument time. Manners does not dispute the fact that he ultimately had approximately 40 minutes for his closing argument and that the prosecutor received a total of 35 minutes for her principal and rebuttal closing arguments combined. Nonetheless, Manners contends that he needed even more time because the prosecutor presented more witnesses than Manners and because Manners had to address the purported inconsistencies in the complainant's testimony. The prosecution, however, bore the burden of proof and had to address the witness testimony in its argument. Moreover, this case was not as complex as Manners suggests. The dispute

essentially came down to whether the jury believed defendant's testimony or the complainant's testimony and the corroborating evidence presented by the prosecution. The trial court was more than patient in giving Manners additional time beyond the previously announced time limit. Manners was afforded ample time to present his arguments and to address the evidence presented. In sum, the trial court's imposition of a time limit on closing argument conformed with an established rule of procedure, MCR 2.507(F), and did not violate defendant's constitutional right to present a defense.

## III. IMPEACHMENT OF THE COMPLAINANT

Manners argues that his Sixth Amendment right of confrontation was violated by the trial court's ruling regarding his effort to impeach the complainant with her preliminary examination testimony. We disagree. We review de novo the constitutional question whether a defendant's Sixth Amendment right of confrontation has been violated. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .' " *Fackelman*, 489 Mich at 524-525, quoting US Const, Am VI. This right includes the right to cross-examine the prosecution's witnesses, but this right is not unlimited. *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). The Confrontation Clause does not permit a defendant to engage in "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Rather, the Confrontation Clause protects the defendant's right for a *reasonable* opportunity to test the truthfulness of a witness's testimony." *Id*. at 189-190 (quotation marks and citations omitted). Cross-examination must not be limited in a way that prevents a defendant from presenting facts from which the jury might infer a witness's bias, prejudice, or lack of credibility. *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996). At the same time, a trial court has authority to exercise reasonable control of the proceedings to prevent the needless consumption of time. MRE 611(a) provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

In this case, Manners was not denied his constitutional right of confrontation. The trial court permitted Manners to cross-examine the complainant at length about her preliminary examination testimony. Defendant's numerous attempts to impeach the complainant with her preliminary examination testimony were sometimes awkward or clumsy, and the trial court interceded at various points to offer suggestions on how to ask the questions appropriately or to urge Manners to consult standby counsel Schlaff. After defendant's repeated questioning of the complainant on a single subject, the trial court directed Manners to move on. defendant's questioning had become repetitive, and the trial court reasonably sought to avoid needless consumption of time on further cross-examination on this point.

Moreover, the questioning at issue concerned a very minor aspect of the underlying facts, i.e., whether Manners was inside or outside the complainant's car at certain times when the complainant first arrived at defendant's house. This point was not critical to the prosecution's case, given the complainant's testimony and corroborating evidence showing how Manners raped and beat the complainant and held her captive over the next several hours. Further, contrary to defendant's suggestion that the complainant's testimony was inconsistent, it appears that defendant's questions conflated different points in time, as the complainant attempted to explain in her answers to his questions. Overall, the trial court exercised extreme patience with defendant's cross-examination, and the trial court's careful handling of this matter did not deprive Manners of his constitutional right of confrontation.

## IV. INCOMPLETE LETTER

Manners argues that the trial court erred by admitting the existing portion of a letter that Manners wrote to the complainant even though the first page of the letter had been destroyed. We disagree. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). We review de novo preliminary questions of law, such as the interpretation of a rule of evidence. *Id*. at 723. "The rules of evidence are interpreted according to the principles of statutory interpretation. Accordingly, if the plain language of a rule of evidence is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation." *People v Snyder (After Remand)*, 301 Mich App 99, 104-105; 835 NW2d 608 (2013) (quotation marks and citations omitted).

MRE 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

This rule is "designed to prevent unfairness which may result if a statement is taken out of context." *Moody v Pulte Homes, Inc*, 125 Mich App 739, 747; 337 NW2d 283 (1983), rev'd in part on other grounds 423 Mich 150; 278 NW2d 319 (1985). "The premise of the rule is that a thought or act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990). The plain language of MRE 106 does not, however, require completeness in every circumstance. Rather, the rule gives the trial court discretion in deciding whether to admit a complete document. *Fackelman*, 489 Mich at 545 n 22.

In this case, the first page of the letter that Manners wrote to the complainant no longer existed. The complainant testified, without contradiction, that she tore up the first page of the letter and no longer had it and that she turned over to the prosecutor the remaining part of the letter without the first page. In these circumstances, it was impossible for the trial court to require the admission of the entire document because the first page of the document no longer

existed. Defendant's argument on appeal is premised on a misunderstanding of MRE 106. Manners suggests that MRE 106 required the exclusion of the entire letter because the first page—which no longer existed—was not admitted. There is no language in MRE 106 requiring such a result in this circumstance.

Further, the trial court offered a reasonable solution by noting that Manners was free to cross-examine the complainant regarding whether she recalled the content of the first page of the letter. The trial court also noted that, if Manners chose to testify, he was free to explain what the first page of the letter stated. As the author of the letter, Manners was in a position to cross-examine the complainant or, if he so chose, to testify on direct examination about the content of the first page. For whatever reason, Manners did not pursue either of these options. Manners did not ask the complainant on cross-examination about whether she recalled the content of the first page of the letter. In addition, although he chose to testify in his own defense and wrote out the questions for his standby counsel to ask, Manners did not provide any explanation of the content of the first page of the letter. Overall, the trial court's ruling was not an abuse of discretion.

In his appellate reply brief, Manners suggests that the incomplete letter should have been excluded under MRE 403 as unfairly prejudicial, misleading, or confusing. Manners did not raise this argument in his principal appellate brief (aside from simply noting that Manners had cited MRE 403 in the trial court with respect to this issue). "Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007). Accordingly, defendant's argument concerning MRE 403 is not properly before this Court. Further, aside from quoting MRE 403 and making conclusory assertions, defendant's reply brief fails to cite pertinent authority concerning MRE 403 or to explain why the trial court's failure to exclude the letter under MRE 403 was an abuse of discretion. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Manners has abandoned this argument by inadequately briefing it. See *Martin*, 271 Mich App at 315. Therefore, we decline to address it.

## V. FALSE TESTIMONY

Manners argues that his convictions must be reversed because they were obtained through the prosecutor's knowing use of perjured testimony. We disagree. "In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Manners did not make an objection below on the ground that the prosecutor committed misconduct by presenting false or perjured testimony. Therefore, the issue is unpreserved.

We review issues of prosecutorial misconduct de novo "to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (quotation marks and citations omitted). "Unpreserved issues are reviewed for plain error affecting substantial rights." *Id*. "To avoid forfeiture, the defendant bears the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court

proceedings." *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016) (quotation marks and citation omitted). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citation omitted).

> It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*Bass*, 317 Mich App at 272-273 (quotation marks and citation omitted).]

A prosecutor is not obligated to disbelieve his or her own witness in the face of contradictory testimony or statements. See *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015) (noting that "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony") (quotation marks and citation omitted).

In this case, Manners contends that the complainant's trial testimony was false because there were some discrepancies between her trial testimony and her preliminary examination testimony, as well as between her testimony at the first and second preliminary examinations. The prosecutor asserted that some of the purported discrepancies were not discrepancies at all, but the prosecutor acknowledges that there are some differences between the complainant's preliminary examination testimony and her trial testimony. "Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Bass*, 317 Mich App at 275. Manners has pointed to some apparent discrepancies between the complainant's trial testimony and preliminary examination testimony, but he has failed to establish definitively that the complainant's trial testimony was false, let alone that the prosecutor knowingly presented perjured testimony. Indeed, Manners fails to account for the possibility that the complainant's inconsistent testimony or statements were the product of honest mistakes or memory impairments. The forensic nurse who examined the complainant and testified as an expert in sexual assault forensic examinations explained that a traumatic experience such as an assault may cause a person's memory to function differently than normal. The criminal episode in this case lasted several hours during which the complainant was raped, beaten, and held captive. The existence of some discrepancies between the complainant's preliminary examination and trial testimony concerning relatively minor details of what occurred over the course of several hours during this episode does not establish that the complainant's trial testimony was false. Because Manners has not shown that the complainant's trial testimony was actually false, he has not shown that the prosecutor's introduction of that evidence was plain error affecting his substantial rights.

Moreover, it is apparent from the record that Manners received a fair trial. Manners was afforded ample opportunity to cross-examine the complainant regarding any discrepancies in her testimony or statements. The jury nonetheless credited the complainant's testimony, which was corroborated in numerous respects by other evidence at trial. That corroborating evidence included the testimony of a police officer who observed the complainant's physical and mental condition following the ordeal and who saw a "tremendous amount of blood" on the side of the house under a broken window where the complainant had been injured, the testimony of a neighbor who heard screaming and glass shattering, the testimony of a forensic nurse who examined the complainant and observed her physical injuries, the testimony of a DNA expert stating that defendant's DNA was found on an anal and perianal swab taken from the complainant's body, surveillance video showing Manners and the complainant at a gas station where Manners took the complainant while he was holding her captive, and testimony that Manners fled from the police and was found hiding in a garage two blocks from his house. The complainant acknowledged having conflicted feelings about Manners even after he committed the instant crimes, sometimes feeling like she both loved and hated him. In sum, the minor discrepancies in the complainant's testimony do not demonstrate that the complainant's trial testimony was false or that the prosecutor knowingly used perjured testimony. Overall, Manners received a fair trial.

## VI. THE COMPLAINANT'S MEDICAL RECORDS

Manners contends that the trial court abused its discretion by denying his request for an in camera review by the trial court of any records pertaining to the complainant's purported psychiatric history. We disagree. "A trial court's decision to conduct or deny an in camera review of records in a criminal prosecution is reviewed for an abuse of discretion." *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (quotation marks and citation omitted).

This Court has explained:

> Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense. Nevertheless, defendants generally have no right to discover privileged records absent certain special procedures, such as an in camera review of the privileged information conducted by the trial court. In a criminal sexual conduct prosecution, an in camera review promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial. [*Davis-Christian*, 316 Mich App at 207-208 (quotation marks and citations omitted).]

In *People v Stanaway*, 446 Mich 643, 649; 521 NW2d 557 (1994), our Supreme Court undertook "the difficult task of reconciling the state's compelling interest in protecting the confidentiality of counseling and juvenile diversion records with the defendant's federal and state constitutional rights to obtain evidence necessary to his defense in a criminal trial." The *Stanaway* Court held that

> where a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant. [*Id*. at 649-650.]

Disclosure is not warranted, however, when the defendant is merely on a fishing expedition. *Stanaway*, 446 Mich at 680. "A defendant 'is fishing' for information when he or she relies on generalized assertions and fails to state any 'specific articulable fact' that indicates the privileged records are needed to prepare a defense." *Davis-Christian*, 316 Mich App at 208, quoting *Stanaway*, 446 Mich at 681. For example, the *Stanaway* Court rejected the defendant's assertion that he needed the complainant's medical records to search for any prior inconsistent statements as inadequate justification to obtain those records. *Stanaway*, 446 Mich at 681-682.

In this case, the trial court properly denied defendant's request for an in camera review of any records pertaining to the complainant's purported psychiatric history. The record reflects that Manners is merely on a "fishing expedition." Manners simply made generalized assertions. Manners provided no specific articulable facts to justify a good-faith belief that there is a reasonable probability that any privileged records are likely to contain material information necessary to the defense. Manners stated only that the complainant told him she has a psychiatric condition and that Manners has seen the complainant take medication for a psychiatric condition. Manners fails to explain why any psychiatric records are likely to contain material information necessary to his defense other than to assert that such records may support a challenge to the complainant's credibility. Defendant's allegations reflect only a generalized hope that any psychiatric records might provide a basis to challenge the complainant's credibility. Such a possibility exists in any criminal sexual conduct case in which the complainant has undergone counseling or psychiatric treatment and does not by itself provide a sufficiently specific articulation to justify an in camera inspection. Therefore, the trial court's denial of defendant's request did not constitute an abuse of discretion.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Manners argues that he was denied the effective assistance of counsel. In particular, although Manners represented himself throughout most of the trial, he contends that he was denied the effective assistance of counsel because Schlaff, who represented Manners before trial and up to the voir dire stage, failed to interview or present defendant's former girlfriends as character witnesses or to file a witness list that included those witnesses. We disagree. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Manners did not preserve the issue because he did not file either such motion.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo."

*People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). This issue is unpreserved, so "our review is limited to mistakes apparent on the record." *Payne*, 285 Mich App at 188.

To show ineffective assistance of counsel, a defendant "must show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). To show prejudice, "a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." *Id.* (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

> Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. Trial counsel's failure to call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. A substantial defense is one that could have affected the outcome of the trial. [*Id.* (citations omitted).]

Manners contends that Schlaff's failure to interview or call his former girlfriends as character witnesses or to file a witness list that included the former girlfriends deprived Manners of the effective assistance of counsel. Setting aside the fact that Manners represented himself during the presentation of testimony at trial and that Manners could have sought to call the former girlfriends himself once he assumed control of the defense,[2] Manners has failed to overcome the presumption that Schlaff's declination to file a witness list that included those witnesses was a sound trial strategy. During a pretrial hearing, Schlaff explained that the purported character witnesses would not have added anything of substance to the defense and that the prosecution's cross-examination of those witnesses could have been harmful to Manners. Manners has offered no reason to question Schlaff's strategic assessment in this regard. Moreover, Manners has not provided an affidavit from any of the purported character witnesses, and there is no evidence in the record that any of his purported character witnesses would have testified in favor of his defense as he asserted they would. Therefore, Manners has not shown that he was deprived of a substantial defense, and his ineffective assistance claim fails.

Manners briefly alludes to other possible grounds for asserting an ineffective assistance of counsel claim but then states that he will limit his argument to Schlaff's failure to present his character witnesses because of the page limitation on his appellate brief. Therefore, by his own admission, Manners has abandoned any additional ineffective assistance of counsel claims. Even

---

[2] Manners asserts that he was unable to call the former girlfriends himself because he lacked funds to make phone calls from jail during trial, but there is no support in the record for this assertion. Manners fails to explain why he could not have asked a family member or Schlaff, who served as standby counsel after Manners assumed control of the defense, to contact the purported character witnesses and to ask them to appear at trial to testify. Manners did not ask the trial court for permission to file a late witness list that included these witnesses or for permission to call the witnesses despite the fact that they were not disclosed in a witness list.

if Manners had not stated that he was abandoning such additional claims, he has failed to provide sufficient elaboration of such claims. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. These additional claims are abandoned. See *Martin*, 271 Mich App at 315. Therefore, we decline to address them.

## VIII. JUDICIAL BIAS OR MISCONDUCT

Manners argues that he was deprived of a fair trial because of judicial misconduct. We disagree. In order to preserve a claim of judicial misconduct, a defendant must object on that basis in the trial court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). To the extent that Manners is challenging the trial judge's denial of his recusal motion and asserting certain allegations of pretrial judicial misconduct, the issue is preserved. However, defendant's argument is primarily directed toward the trial judge's comments, instructions, or rulings during trial. Manners did not timely object on the basis of judicial misconduct to those comments, instructions, or rulings. Therefore, the issue is not unpreserved in those respects.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain relief under this standard, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error was prejudicial in that it affected the outcome of the lower court proceedings. *Id*. at 763. Reversal is warranted only when the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*.

Bias or prejudice "for or against a party or attorney" is a ground for disqualification of a judge. MCR 2.003(C)(1)(a). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016) (quotation marks and citation omitted).

A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. When the issue is preserved and a reviewing court determines that the trial judge's conduct pierced the veil of judicial impartiality, the court may not apply harmless-error review. Rather, the

judgment must be reversed and the case remanded for a new trial. [*Stevens*, 498 Mich at 164.]

Initially, Manners presents many of his assertions of judicial bias or misconduct in a cursory manner. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. To the extent that Manners has insufficiently briefed these assertions, he has abandoned them. See *Martin*, 271 Mich App at 315. Nonetheless, we address defendant's contentions of judicial misconduct.

Manners suggests that the trial judge exhibited bias by providing incorrect reasons for denying his motion for recusal and motion for an adjournment. Manners disputes the trial judge's conclusion that his recusal motion was untimely and the trial judge's suggestion that an adjournment had already been granted. "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). Even if the trial judge was incorrect in suggesting that the recusal motion was untimely[3] or in implying that an adjournment had already been granted,[4] this alone does not establish bias because there is no evidence of a deep-seated favoritism or antagonism that would make the exercise of fair judgment impossible. Defendant's speculation that the trial judge deliberately made up false reasons to deny these motions so that the trial judge could keep the case and exact some sort of retaliation against Manners for having complained about the trial judge lacks any support in the record.

Next, Manners suggests that the trial judge exhibited bias or engaged in misconduct by ruling against Manners on various issues discussed earlier in this opinion. However, the trial judge's rulings on those issues do not alone constitute valid grounds for asserting bias because there is no evidence of a deep-seated favoritism or antagonism that would make the exercise of fair judgment impossible. Moreover, as discussed earlier in this opinion, Manners has not established that the trial judge erred in ruling on any of those issues. Therefore, defendant's contention of judicial bias or misconduct in the trial judge's rulings on those issues lacks merit.

---

[3] The primary reason for the denial of the recusal motion was that the trial judge had no personal bias or prejudice and that there were no grounds for recusal. Therefore, any error in the trial judge's reasoning regarding the timeliness of the recusal motion had no effect on the ultimate disposition of that motion.

[4] Manners suggests that the trial judge's reasoning regarding the motion for an adjournment was erroneous because the trial judge stated that he could not adjourn the trial "again," even though no previous adjournment had been granted. The trial judge's mere use of the word "again," assuming it was a misstatement or was erroneous, does not evidence disqualifying bias, and Manners fails to explain how he was entitled to an adjournment such that the trial judge's purported error would have affected the ultimate disposition of the adjournment motion.

Manners accuses the trial judge of depriving him of water during his closing argument. At one point during his closing argument, Manners said he was thirsty and asked for water. The trial judge replied, "I don't think we have any cups[,]" and Manners said he would carry on. Manners provides no basis to conclude that the trial judge pierced the veil of judicial impartiality merely by stating that he did not think there were any cups in the courtroom. Manners could have requested a short recess if he thought it was necessary, but he instead carried on with his closing argument.

Manners makes a cursory assertion that he was unable to prepare adequately for trial and that he received some discovery items in the middle of trial because he allegedly had not been provided a discovery packet when he requested it at a pretrial hearing. However, at the pretrial hearing referred to by Manners, Manners asked about his discovery package, and the trial judge responded, "You've gotten your discovery package. We went over this before last time. The only thing that you didn't have that – was the medical records which hadn't been filed yet." To the extent that Manners received discovery items in the middle of trial, this is attributable to the fact that Manners decided on the second day of trial to represent himself. There is no indication in the record that the trial judge pierced the veil of judicial impartiality with respect to these discovery matters.

Manners next suggests in a cursory fashion that the trial judge exposed his partiality by expressing support for the prosecutor being granted a mistrial after Manners was removed from the courtroom following his emotional outburst during final jury instructions. Manners interrupted the trial judge's final instructions and asked for an opportunity to speak. When the trial judge explained that the closing arguments were over, Manners stated, "You gave me 20 minutes, your Honor. This is my life. This is the rest of my life, your Honor." The trial judge excused the jury and had Manners removed from the courtroom because he kept speaking. The prosecutor asked to consult the appellate division of her office because Manners had used the word "life" multiple times, and the trial judge stated that she could do so. The trial judge noted that if Manners caused a mistrial, the case could be retried. Schlaff stated that Manners was not entitled to a mistrial, and the trial judge agreed. Ultimately, neither party moved for a mistrial related to this matter. The trial judge's mere discussion of this matter outside the presence of the jury was not judicial misconduct.

Manners argues that the trial judge purposely made various comments that were meant to prejudice the jury against Manners. This contention lacks merit. For example, Manners complains that, during final instructions, the trial judge told the jury that evidence of defendant's flight "does prove guilt." Manners asserts that the trial judge took away the jury's right to determine whether his flight constituted evidence of guilt. Defendant's assertion that the judge deliberately sought to prejudice the jury by providing such an instruction lacks support in the record. Manners fails to account for the possibility that the trial judge inadvertently omitted the word "not" or that the transcription was the stenographer's error. Moreover, the trial judge's instruction as a whole made clear that a person may run or hide for innocent reasons and that it was for the jury to decide whether defendant's flight exhibited consciousness of guilt. The instruction as a whole stated:

There has been some evidence that the defendant tried to run away and/or hid – or tried to hide and/or hid after the alleged crime. This evidence does [sic]

-14-

prove guilt. A person may run or hide for innocent reasons, such as panic, mistake or fear.

However, a person may also run or hide because of consciousness of guilt. You must decide first whether the evidence is true, and then if true, whether it shows that the defendant had a guilty state of mind.

Notably, after the trial judge provided the final instructions to the jury, Manners stated that he was "satisfied with the instructions." By expressing satisfaction with the instructions, Manners waived any error concerning the instructions, thereby extinguishing any error. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In any event, because there is no evidence that the omission of the word "not" was deliberate or that it exhibited bias or prejudice, and because the instruction as a whole was adequate, Manners has failed to show that the trial judge pierced the veil of judicial impartiality.

Manners next contends that during his closing argument, the trial judge made a comment which suggested that Manners should be found guilty after the closing arguments and final instructions were concluded. During his closing argument, Manners asked for more time, and the trial judge said that Manners could have five more minutes. Manners asked for more time, and the trial judge answered that he had already allowed Manners to argue for over half an hour despite the initial time limit of 20 minutes. The following exchange then occurred:

> *MANNERS*: Right. But as of right now I'm guilty in the jury's eyes and I need to prove –
>
> *THE COURT*: I don't know whether you're guilty in the jury's eyes. Under the law –
>
> *MANNERS*: And I can – I need to prove to them. I can prove –
>
> *THE COURT*: Mr. Manners.
>
> *MANNERS*: Yes, sir. Yes, sir.
>
> *THE COURT*: Stop.
>
> *MANNERS*: Yes, sir. I'll be – I'll move along. I'm speeding along.
>
> *THE COURT*: At this point in time, under the presumption of innocence, you're still not guilty –
>
> *MANNERS*: Okay.
>
> *THE COURT*: –until all of the arguments are done and I've given the final closing instructions.

As the above excerpt shows, Manners, not the trial judge, erroneously suggested that he was presumed guilty and was required to prove otherwise. The trial judge commendably corrected

defendant's erroneous statements and emphasized that Manners was presumed innocent. Manners suggests on appeal that the trial judge's comments could be construed as indicating that Manners should be found guilty after closing arguments and final instructions were over, but when read in context, it is clear that the trial judge was correcting defendant's own misstatements inverting the burden of proof. The trial judge did not exhibit bias or partiality or otherwise engage in judicial misconduct in addressing this matter. Additionally, the trial judge properly instructed the jury on the presumption of innocence again during the trial judge's final instructions.

Next, Manners asserts that the trial judge was "subtly sarcastic" when reading the charges to the potential jurors during jury selection. In particular, Manners challenges the following comments by the trial judge:

> Now, this is a criminal case. It involves five separate counts which I will explain more fully later but the basic charges are as follows:
>
> Count One – well, it alleges that on April 24th of 2016 at 15810 Biltmore in Detroit, Michigan.
>
> Count One, that the Defendant did commit criminal sexual conduct in the first degree. In Count Two, that on that date the Defendant did commit criminal sexual conduct in the first degree. In Count Three, that the Defendant did commit unlawful imprisonment of [the complainant]. Count Four, that he did the assault with intent to do great bodily harm less than murder [the complainant]. And in Count Five did commit domestic violence.

Manners asserts that the trial judge "shifted into his subtly sarcastic tone" when stating, "well it alleges[,]" and that the trial judge enunciated the word "did" in order to deliver the message to the potential jurors that Manners committed the crimes.[5] There is no support in the record for defendant's assertion that the trial judge's tone was "subtly sarcastic" or otherwise improper. Although this Court did not have the opportunity to observe the trial judge, "in certain circumstances, the very nature of the words used by the judge can exhibit hostility, bias, or incredulity." *Stevens*, 498 Mich at 176. In addition, an objection "may specifically note the inappropriateness of the judge's demeanor in the courtroom, further aiding the appellate court in understanding the tenor of judicial involvement." *Id*. In this case, the nature of the words used by the trial judge did not exhibit bias, hostility, or incredulity. Further, Manners made no objection taking note of any inappropriate tone or demeanor on the part of the trial judge. Therefore, Manners has identified no reason to conclude that the trial judge pierced the veil of judicial impartiality when reading the charges.

---

[5] In the affidavit appended to his appellate brief, Manners avers that "during trial, each one of the 'Dids' rendered by the Court . . . were emphatically enunciated by the judge." Manners did not present this affidavit "in the lower court, however, and may not now expand the record on appeal." See *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).

Next, Manners challenges the following comment made by the trial judge during jury selection: "The Defendant has pled not guilty to each of these charges. You must understand that the information itself is not evidence and you should not think that it is evidence of his guilt or that he must be guilty because he has been charged." Manners contends that by using the phrase "his guilt[,]" the trial judge was making a "sly comment" intended to suggest that Manners was guilty. Defendant's contention lacks merit. The trial judge stated nothing improper but instead instructed the potential jurors that the mere fact that charges were filed against Manners was not evidence of guilt.

In sum, none of defendant's contentions of judicial bias or misconduct have merit. Even if any of defendant's contentions could be construed as somehow establishing judicial misconduct, any such misconduct was sufficiently minor or brief and any possible prejudice was alleviated by the following instruction given by the trial judge at the close of trial:

> Now, any comments, rulings, questions or instructions that I have given are also not evidence. It's my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express any personal opinion about the case.

> In fact, if you do believe that I have an opinion about how you should decide this case, you must ignore it. You are the only judges of the fact [sic] and you should decide this case based only on the evidence.

"Because it is well established that jurors are presumed to follow their instructions, a curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Stevens*, 498 Mich at 177 (quotation marks, citation, and alteration omitted). Therefore, this instruction ensured Manners a fair trial.

## IX. CUMULATIVE ERROR

Finally, Manners contends that he was denied a fair trial as a result of the cumulative effect of the purported errors previously discussed. We disagree. This Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). We review de novo whether the defendant was denied a fair trial. *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). Because this issue is unpreserved, this Court's review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). The cumulative effect of the errors must have been seriously prejudicial in order to conclude that the defendant was denied a fair trial. *Id.* Moreover, the cumulative effect "must undermine the confidence in the reliability of the verdict before a new trial is granted. Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106 (citation omitted). As discussed throughout

-17-

this opinion, each of defendant's appellate arguments is devoid of merit.  Because Manners has failed to establish any errors, there can be no cumulative effect of errors requiring reversal.

We affirm.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto